### Arthur A. Allen v. Burlington Housing Authority

[270 A.2d 588]

No. 117-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed September 10, 1970

*Arthur & Arthur,* Burlington, for Plaintiff.

*John T. Ewing,* Burlington, for Defendant.

**Shangraw, J.** On September 7, 1965, the Burlington Housing Authority condemned property of the plaintiff, Dr. Arthur A. Allen, located in Burlington, Vermont. This condemnation proceeding was instituted pursuant to the provisions of Chapter 87, 24 V.S.A. § 4011, and related sections 221, 233 of Title 19, V.S.A.

The property consists of a two-story residential and commercial building located on the northerly side of Pearl Street,

and designated by the City of Burlington as 52 and 54 Pearl Street. The lot has a frontage on Pearl Street of 51.5 feet, more or less, and a depth of approximately 214.5 feet.

Dr. Allen acquired the property from the estate of his mother in 1959. The land and buildings have been in the Allen family since 1913. After the plaintiff acquired the property, it served a limited commercial purpose until 1964.

Beginning in 1964 plaintiff started renovating and improving the property for the purpose of changing the building into an apartment house. At that time a cafe and barbershop located on the first floor of the building were rented. The rental for the cafe was $100 monthly, and that of the barbershop $50 per month. Elderly men occupied the second floor and paid minimal rent. A barn located on the Allen premises was torn down, land fill was brought in, and the ground levelled to provide for parking and space for additional apartments. The cost of these changes and renovations was about $18,000.

Pursuant to 24 V.S.A. § 4011 and Chapter 5, 19 V.S.A. the Burlington Housing Authority awarded the plaintiff $31,000 for the taking of the premises in question, of which $29,450 was paid to the plaintiff. Payment of $1,550 representing five per cent of the award was withheld, pursuant to the provisions of 19 V.S.A. § 230, pending final disposition of the appeal.

Plaintiff appealed to the Chittenden County Court from this award. The case was tried by jury in April 1969. A verdict was rendered in favor of the plaintiff for $29,000 and judgment entered thereon. No costs were allowed the Burlington Housing Authority. The judgment order also, in part, provides: ". . . the Authority shall pay over the balance of said award, to wit, the sum of $1,550." Plaintiff has appealed to this Court for review.

Plaintiff filed a motion to set aside the verdict and grant a new trial. The motion is primarily based upon the grounds that the verdict was contrary to the weight of the evidence; that there was no evidence to support the verdict; and that the jury misconstrued or disregarded the court's charge. Plaintiff assigns error to the trial court's denial of the motion by reason of the claimed inadequacy of the verdict as not reflecting the fair market value of the property condemned. 19 V.S.A. § 221(2) provides that such damages ". . . shall

be the value for the most reasonable use of the property or right therein, . . . ."

Plaintiff also assigns the following grounds of claimed error in his search for a new trial: (1) irregularities in the impaneling of the jury; (2) admission of certain evidence; (3) the court's charge; and (4) to the judgment order.

Plaintiff testified that in his opinion the fair market value of his property at the time of the taking was between $56,000 and $57,000. In arriving at this conclusion he considered the sale price of the Izzo property to the Bove family which is designated as 58 Pearl Street, and lies easterly and adjacent to plaintiff's property.

The Izzo property consisted of a lot, with house thereon. This lot had a frontage of 50 feet. This property also included an adjoining lot. The total frontage of both of these lots was 100 feet. Of the sale price of $57,000 it was plaintiff's opinion, that of the total price of $57,000 paid by the Bove family for these two lots, $35,560 should be apportioned to the separate lot and house located thereon. He testified that this parcel, with house thereon, was somewhat comparable, in value, to his property before renovations and repairs were made by him. By comparing the figure of $35,560 for the Izzo property, which had less frontage and depth than that of plaintiff's land, it was plaintiff's opinion that his property, before renovations, was worth $38,175. By taking the figure of $38,175 and adding the improvements of about $18,000 plaintiff arrived at between $57,000 and $58,000 as the fair market value of his property.

George Dana Alling, of South Burlington, Vermont, qualified as a realtor and appraiser. This witness testified that he had inspected plaintiff's property following the renovations and found the interior to be in "impeccable condition." It was his opinion that plaintiff's property was worth $48,000. This opinion was based upon comparable real estate values of properties in the immediate neighborhood, including the Izzo property. He also considered the capitalization of the earning power of the Allen premises.

At the time of the taking of plaintiff's property, there was available for rental four apartments, and the two rooms formerly used as a cafe and a barbershop. It was Mr. Alling's judgment that this property would produce a monthly income of about $470 and a net yearly income of approximately $4,000.

This would reflect an annual net return of eight and one half percent on his appraised figure of $48,000. Mr. Alling testified that this rate of return on rental property is the standard generally accepted nationwide.

Giles H. Willey of Essex Junction, Vermont, a real estate appraiser with twenty-five to thirty years of experience in this field was called as a witness by the plaintiff. This witness examined plaintiff's property with Mr. Alling. He testified that the net annual income from the Allen property would produce four thousand dollars a year. His opinion was based on ". . . its earning capacity, the potential, the property was worth forty-five thousand dollars for someone to buy and utilize". He also stated "I think there would have been a prospect for that amount of money, yes." This witness also testified that the capital investment of $45,000 would amortize itself in twelve years. This witness did not seriously take into consideration comparable sales of similar property in making his appraisal of plaintiff's property.

Richard Callahan was called by the defendant as a witness. He testified that he had lived in the Burlington area for about fifteen years and had been a real estate appraiser for nearly six years. During the six year period he had appraised forty to fifty different properties in the Burlington area. His opinion of the fair market value of plaintiff's property was $24,500.

Mr. Callahan characterized the neighborhood in which the Allen property is situated as multi-family residential, tending toward a more commercial use rather than residential. He estimated the age of the property in question to be about 100 years and that its most reasonable use was multi-family residential. He ruled out the cost approach, or replacement of the building, in view of its age. He also testified that he found no ideally comparable properties in the immediate locality,— that is partly residential and partly commercial.

Mr. Callahan considered the Allen premises as primarily an investment type of property and it was upon this basis that he arrived at its value. He concurred with the testimony of Mr. Alling that the property should produce a gross income of $470 monthly. After considering total expenses, this witness estimated that an owner of the property would derive a net yearly income of only $3,039 which he capitalized at twelve

and one half years. In this period the purchaser of the property would recapture his original investment.

In referring to the remodeling costs of $18,000 Mr. Callahan did not consider that the value of the property had been increased to that extent. On this subject he stated "it did improve the property, but to what extent I don't really know." He did not consider the sale price of the Izzo property in that he ". . . felt there may have been a premium involved."

To summarize the basis of the opinions of the three expert appraisers, Mr. Alling considered comparable values of property in the immediate locality of plaintiff's property, as well as the capitalization of income approach, in arriving at the fair market value of the Allen property. Mr. Willey and Mr. Callahan each considered capitalized income as the basis of their valuation of the premises.

■ Generally, an expert's opinion is of no greater probative value than the soundness of his reasons given therefor will warrant. *State* v. *Critzer*, 230 Md. 286, 186 A.2d 586 (1962) ; *Surkovich* v. *Doub*, 258 Md. 263, 265 A.2d 447 (1970).

■ There is no exact formula available to determine in all cases the value of condemned property. As stated in *Record* v. *State Highway Board*, 121 Vt. 230, 240, 154 A.2d 475 (1959). "No hard and fast rule may be laid down applicable to every case as to what elements properly enter into consideration in determining the market value of property sought to be condemned."

■ Capitalization of income, under proper circumstances appears to be an accepted method in arriving at values. The existence of a sale in the vicinity is not essential to the ascertainment of market value, and such value may be established by the testimony of people familiar with the property and its value, and with the uses to which such property may be put. *Record* v. *State Highway Board, supra,* 121 Vt. at 240.

■ It appears from the record that the evaluation method used by the plaintiff was based upon complete reimbursement of the costs of renovations. These improvements did not necessarily reflect an increase in the value of the property to the extent claimed by Dr. Allen. In the case of *Smith* v. *State*

*Highway Board,* 125 Vt. 54, 57, 209 A.2d 495 (1965), this Court held, "The extent to which the improvements contribute to the total award depends on how much they add to the overall market value of the property as a unit, in the light of its most reasonable use."

A motion to set aside a verdict and grant a new trial on the ground that the verdict is against the evidence is a motion addressed to the discretion of the trial court. In the absence of a showing of an abuse of discretion the ruling of the trial court must stand. *Langevin* v. *Gilman,* 121 Vt. 440, 447, 159 A.2d 340 (1960) ; *Merrill* v. *Reed,* 123 Vt. 248, 252, 185 A.2d 737 (1962).

Such a motion based on the ground that there is no supporting evidence raises a question of law. *LaFerriere* v. *Saliba,* 119 Vt. 25, 30, 117 A.2d 380 (1955). A motion on this ground is the same in nature and substance as a motion for a directed verdict. *In re Brown's Estate,* 114 Vt. 380, 382, 45 A.2d 568 (1946). Such a motion cannot properly be granted if there is evidence fairly and reasonably tending to justify the verdict.

When the Court is called upon to review the trial court's disposition of a motion to set aside a verdict and grant a new trial, we are bound to accord to the ruling below all possible presumptive support, very like that the trial court should give to the verdict of the jury. *Gilbert* v. *Churchill & Cote,* 127 Vt. 457, 461, 252 A.2d 528 (1969).

Verdicts are not lightly to be disregarded. It is the proper province of the jury to resolve the true facts. *Dashnow* v. *Myers,* 121 Vt. 273, 282, 155 A.2d 859 (1959). The burden of showing that the court below has gone astray is on the party attacking the ruling. *Grow* v. *Wolcott,* 123 Vt. 490, 494, 194 A.2d 403 (1963).

Considering the record in its entirety, we cannot say that the trial court abused its discretion in failing to set aside the verdict as being contrary to the evidence, nor can it be said, as a matter of law, that there was no evidence to support the verdict. The denial of the motion to set aside the verdict and grant a new trial is sustained. The verdict was within the

range of the appraisals made of the Allen property and it is supported by the evidence.

In passing upon plaintiff's claimed irregularities during the impaneling of the jury, it is sufficient to say that he accepted the trial jurors without protest, challenge, or exception. Thus, he waived all irregularities and defects, if any, in the respects claimed. *State* v. *O'Connor,* 117 Vt. 176, 178, 86 A.2d 924 (1952).

Plaintiff contends that the admission of defendant's Exhibit C was prejudicial. This photograph was taken February 16, 1966 and included plaintiff's building and the one next westerly thereof. It reveals the windows of plaintiff's house as boarded up. This exhibit was merely offered by the defendant to show the surrounding neighborhood. Plaintiff complains that its admission was not of sufficient assistance to warrant its reception in evidence.

The rule in this jurisdiction is that the admissibility of photographs is one largely within the discretion of the trial court and not ordinarily reviewable. *Killary* v. *Chamber of Commerce,* 123 Vt. 256, 267, 186 A.2d 170 (1962) ; *Colson* v. *State Highway Board,* 122 Vt. 392, 393, 397, 173 A.2d 849 (1961). Two other photographs were received in evidence, Defendant's Exhibits A and B. One was taken showing the front of plaintiff's house, and the other its rear portion. These were admitted without objection on the part of the plaintiff. It is difficult to conceive how plaintiff was prejudiced by the admission of Defendant's Exhibit C. Plaintiff gains nothing by his exception to its admission in evidence.

Plaintiff, in his brief, now challenges the trial court's charge to the jury as being incorrect and incomplete. No exception was taken thereto. Plaintiff indicated, as of record, his satisfaction with the charge as given. It is the generally accepted rule that error in a charge can only be predicated if the mistake was raised and brought to light at the trial level so as to give the trial court the opportunity to correct the situation. *State* v. *Stone,* 124 Vt. 215, 216, 201 A.2d 703 (1963).

Plaintiff finds fault with the judgment order in that no interest was added to the verdict or costs allowed in favor of the

plaintiff. The trial court instructed the jury that this was a trial *de novo* and not to consider the award made below. The court continued by stating that it was the jury's province to determine plaintiff's damage and in so doing that no interest should be added to the damage so found. The court further added "Do not add interest, as we will take care of that one." It is in this light that the plaintiff now claims error in the judgment order in that no interest was added and no costs allowed plaintiff. 19 V.S.A. § 233, states:

> "When the appellant is allowed a sum greater than was awarded by the board the court shall tax costs against the board. When the award fixed by the board is upheld the court shall tax costs against the appellant. The court shall fix the time for paying the damage awarded."

The award was for $31,000. This was followed by a payment to the plaintiff of $29,450 to apply thereon. The verdict was for only $29,000. Mathematically, with interest considered, the verdict or judgment would not have equalled or exceeded the award, nor would the plaintiff, under the provisions of section 233, *supra,* have been entitled to taxable costs. No costs were taxed against the plaintiff and the Burlington Housing Authority was directed, by the order, to pay plaintiff the sum of $1,550, representing the withheld portion of the award. Plaintiff has no reason to complain about the judgment order.

*Judgment affirmed.*